United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE VIGIL,<br><br>    Plaintiff,<br><br>v.<br><br>HYATT CORPORATION, et al.,<br><br>    Defendants. | Case No. 22-cv-00693-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 44 |

Pending before the Court is Plaintiff's unopposed motion for preliminary approval of class action settlement. *See* Dkt. No. 44. The Court held a hearing on the motion. For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Joe Vigil worked as a security officer at the Grand Hyatt San Francisco hotel from approximately February 2001 to November 2020. Dkt. No. 44-2, Ex. C ("SAC") at ¶¶ 2, 23.[1] Plaintiff alleges that he and putative class members were not properly compensated for their work. *See id.* at ¶¶ 23–26. Specifically, Plaintiff contends that Defendants Hyatt Corporation and Grand Hyatt S.F., LLC had a uniform policy of requiring employees to work off the clock. *Id.* at ¶ 26. Employees were not allowed to leave the premises during meal and rest periods, and were required to carry walkie talkies, cellular phones, and other such devices even during their meal and rest periods. *See id.* at ¶¶ 27, 29–30, 41, 46. At other times, because of the demands of work, employees

---

[1] As part of the settlement agreement, detailed below, the parties agreed to file a second amended complaint that more explicitly addresses theories of liability raised at mediation, particularly regarding protocols during the COVID-19 pandemic. *See* Dkt. No. 44-2, Ex. 1 ("SA") at § 2.6; *see also* Dkt. No. 44-2 ("Hawkins Decl.") at ¶ 27.

1    were not provided any meal or rest periods. *See, e.g.*, *id.* at ¶¶ 38–39, 44–45. During the COVID-
2    19 pandemic, employees were also required to wait for an off-the-clock COVID-19 screening before
3    resuming work. *See id.* at ¶¶ 28, 31, 40. Security personnel, such as Plaintiff, were not provided
4    any breaks and had to remain at their posts to perform these screenings and monitor security
5    cameras. *Id.* at ¶ 32. Employees were often required to use their personal phones during work, but
6    were not compensated for such expenses. *See id.* at ¶ 49. Plaintiff alleges that as a result of these
7    policies, Defendants failed to (1) pay minimum and overtime wages and sick leave; (2) provide meal
8    and rest periods; (3) timely pay wages during employment and upon separation; (4) reimburse
9    necessary expenses; and (5) maintain accurate timekeeping and payroll records. *See id.* ¶ 7, 61–
10   104.

   **B.     Settlement Agreement**

11   
12       In December 2022, the parties participated in a full-day mediation with mediator Paul
13   Grossman. *See* Dkt. No. 44-1 at 2. The parties ultimately entered into a settlement agreement,
14   fully executed in May 2023. The key terms are as follows:
15       <u>Class Definition</u>: The Settlement Class is defined as "all current and former non-exempt,
16   hourly employees working for Defendants at the Grand Hyatt San Francisco hotel at any time
17   between November 2, 2017 to March 9, 2023." SA § 1.3.
18       <u>Settlement Benefits</u>: Defendants will make a $725,000 non-reversionary payment. SA
19   §§ 1.16, 5.1, 5.7. The parties propose that $10,000 of this gross settlement fund be allocated to the
20   Private Attorneys General Act ("PAGA") claim as civil penalties. *Id.* at §§ 1.19, 5.6. Of this
21   PAGA Payment, $7,500 will be paid to the California Labor and Workforce Development Agency
22   ("LWDA") and $2,500 will be distributed pro rata to class members. *Id.*; *see also* Cal. Lab. Code
23   § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved
24   employees). The gross settlement fund also includes Court-approved attorneys' fees and costs,
25   settlement administration fees, the employees' share of payroll taxes, any incentive payment to
26   Plaintiff as class representative, and payments to class members. *Id.* at § 1.16. The cash payments
27   to the class will be based on the number of weeks each class member worked during the relevant
28   class period. *Id.* at §§ 1.17, 5.7.1

1    <u>Release</u>:  All Settlement Class Members will release Defendants and their subsidiaries:

> of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between November 2, 2017 through March 9, 2023, for any and all claims that were raised or could have been raised based on the factual allegations made in the operative Second Amended Consolidated Complaint. This includes claims for (1) failure to pay minimum wages; (2) failure to pay overtime wages at the regular rate of pay; (3) failure to provide required meal periods and pay premium pay at the regular rate of pay; (4) failure to provide required rest periods and pay premium pay at the regular rate of pay; (5) failure to timely pay wages due and payable during employment; (6) failure to time pay wages upon separation; (7) failure to reimburse necessary expenses; (8) knowing and intentional failure to comply with itemized wage statement provisions; (9) failure to maintain timekeeping and payroll records; (10) failure to properly pay sick leave; (11) PAGA claims for civil penalties pursuant to Labor Code sections 200, 201, 202, 203, 204, 210, 216, 225.5, 226, 226.3, 226.7, 246, 248, 248.5, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2698-2699.5, and 2802; (12) claims brought under Business & Professions Code section 17200 et seq.; (13) claims arising out of alleged violations of the California Labor Code sections 200, 201, 202, 203, 204, 210, 216, 225.5, 226, 226.3, 226.7, 246, 248, 248.5, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2698-2699.5, and 2802, and California Industrial Welfare Commission Wage Order No. 5-2001; (14) penalties of any nature; (15) interest; (16) attorneys' fees and costs; and (17) any other claims arising out of or related to the Second Amended Consolidated Complaint filed in the Action through March 9, 2023.

SA §§ 1.26, 1.27, 6.1.

The checks distributed to class members will also include the following language:

> My signature or cashing of this check constitutes a full and complete release of Hyatt Corporation, and all of their current or former subsidiary or affiliated entities, and their current or former officers, directors, and employees, for any and all claims asserted or that could have been asserted based on the facts alleged in the operative Second Amended Consolidated Complaint in the lawsuit entitled *Vigil v. Hyatt Corporation, et. al*, pending in the United States District Court, Northern District of California, Case No. 4:22-cv-00693-HSG, including the claims brought under the California Labor Code, California Unfair Competition Law, or PAGA, arising during my employment at any time between November 2, 2017 through March 9, 2023.

*Id.* § 5.8.1.

3

  <u>Incentive Award</u>:  The named Plaintiff may apply for an incentive award of no more than $10,000.  SA §§ 5.4, 5.4.1.

  <u>Attorneys' Fees and Costs</u>:  Class Counsel will file an application for attorneys' fees not to exceed 35% of the Gross Settlement Amount, or $253,750, and costs not to exceed $25,000.  SA §§ 5.3, 5.3.1.

  <u>Opt-Out Procedure</u>:  The deadline for a class member to submit a request for exclusion or to object to the Settlement is 45 calendar days after the initial mailing date of the notice.  SA §§ 4.2, 4.2.1, 4.2.2.  Defendants also retain the right to withdraw from the Settlement Agreement if 5% or more of the class members opt out.  *Id.* at § 4.2.3.

## II. PROVISIONAL CLASS CERTIFICATION

  The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

  "The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id*.  However, this concern is not present in certifying a settlement class.  *Id*. at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id*. at 557.

### A. Rule 23(a) Certification

  The Court finds that all the requirements of Rule 23(a) are met:

4

- **Numerosity.** Joinder of the hundreds of estimated class members would be impracticable. *See* Dkt. No. 44-1 at 6 (estimating 527 class members).
- **Commonality.** Common questions of law and fact include the propriety of Defendants' policies requiring employees to remain onsite during meal and rest periods and carry around walkie talkies or cell phones during their breaks. *See* Dkt. No. 44-1 at 6–7.
- **Typicality.** Plaintiff's claims are both factually and legally similar to those of the putative class because Defendants allegedly applied their policies and practices uniformly to Plaintiff and all class members. *See* Dkt. No. 44-1 at 8.
- **Adequacy of Representation.** The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiff or counsel has a conflict with other class members. Plaintiff's counsel has been appointed class counsel in numerous federal and state class actions. Dkt. No. 44-2 at ¶¶ 95–100. The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class to date and will continue to do so.

### B.     Rule 23(b)(3) Certification

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met:

- **Predominance.** The Court concludes that for purposes of settlement, common questions predominate here because under Plaintiff's allegations Defendants' policies and procedures were uniform and violated California law. Although the class members will need to rely upon individual evidence to some extent to calculate their individual damages, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations omitted).
- **Superiority.** A class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them.

Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

### C. Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as Class Representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in class action suits, especially wage and hour class actions. *See* Dkt. No. 44-2 at ¶¶ 95–100; Dkt. No. 44-3 at ¶¶ 12–15. Accordingly, the Court appoints James Hawkins APLC as Class Counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

## III. PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir.

1    2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A
2    more "exacting review is warranted to ensure that class representatives and their counsel do not
3    secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a
4    duty to represent."  *Id*. (quotations omitted).

5    Courts may preliminarily approve a settlement and notice plan to the class if the proposed
6    settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does
7    not grant improper preferential treatment to class representatives or other segments of the class;
8    (3) falls within the range of possible approval; and (4) has no obvious deficiencies.  *In re Lenovo
9    Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)
10   (citation omitted).  Courts lack the authority, however, to "delete, modify or substitute certain
11   provisions.  The settlement must stand or fall in its entirety."  *Hanlon*, 150 F.3d at 1026.

**B.     Analysis**

**i.     Evidence of Conflicts and Signs of Collusion**

The first factor the Court considers is whether there is evidence of collusion or other
conflicts of interest.  *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to
look for "subtle signs of collusion," which include whether counsel will receive a disproportionate
distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an
arrangement where defendant will not object to a certain fee request by class counsel)," and
whether the parties agree to a reverter that returns unclaimed funds to the defendant.  *Id*.

Here, the proposed settlement is non-reversionary.  SA § 5.7.  Checks that remain
undeliverable or uncashed after 180 days will be sent to the California State Controller's Office to
be held as "Unclaimed Property" in the name of the class member.  *Id.* at § 5.10.2.  Following the
hearing on the motion for preliminary approval and in response to the Court's concerns, the parties
submitted a revised notice that explained how class members who had not cashed their checks
within this timeframe could request their checks from the State Controller's Office.  *See* Dkt. No.
47 at ¶ 5, & Ex. 1.

Although the parties suggest that there is no clear sailing agreement, *see* Dkt. No. 44-1 at
12 and Dkt. No. 47 at ¶ 6, the settlement agreement specifically states that Defendants will not

7

oppose a motion for attorneys' fees or an incentive award that is consistent with the terms of the agreement, *see* Dkt. No. 44-1 at ¶¶ 5.4, 7.4.[2]  The Settlement Agreement allows Class Counsel to request up to 35% of the Gross Settlement Amount, or $253,750, and Class Counsel represents that they intend to seek 33 1/3% of the fund, or $241,666.67.  *See* SA § 7.4; Dkt. No. 44-1 at 12, 22.  The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'"  *Roes*, 944 F.3d at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948).  Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Id.* (quotations omitted).  The Ninth Circuit has recently emphasized that "[t]he touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."  *Lowery v. Rhapsody Int'l, Inc.*, 69 F.4th 994, 997 (9th Cir. 2023).

When deciding to award attorney's fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the percentage-of-the-fund method, 25% of a common fund is the benchmark for an attorneys' fees award.  *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  Even if the Court were to award 35% in attorneys' fees, however, the majority of the monetary settlement would still be distributed to class members.  *See Lowery*, 69 F.4th at 997 ("Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class.").  But in any event, the Court is

---

[2] To the extent counsel suggests that a clear sailing arrangement cannot exist if attorneys' fees are paid out of a common fund, *see* Dkt. No. 47 at ¶ 6, the Court simply disagrees.  The Ninth Circuit has explained that a clear sailing arrangement exists where "the defendants agreed that they would not object to an attorneys' fees-and-expense award . . . ."  *Roes*, 944 F.3d at 1050.  Such an arrangement may exist regardless of how attorneys' fees are being paid.

1    cognizant of its obligations to review class fee awards with particular rigor, and at the final

2    approval stage will carefully scrutinize the circumstances and determine what attorneys' fee

3    awards is appropriate in this case.[3]

4    Despite the clear sailing provision in the settlement agreement, the Court nevertheless

5    finds that this factor weights in favor of preliminary approval at this stage.

### ii.  Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although the Settlement Agreement authorizes Plaintiff to seek an incentive award of no more than $10,000 for his role in this lawsuit, the Court will ultimately determine whether he is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff must provide sufficient evidence to allow the Court to evaluate his award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable,

---

[3] Plaintiff's counsel argues that it is entitled to attorneys' fees in the amount of 33 1/3% of the settlement fund, *see* Dkt. No. 44-1 at 21–22, but the Court need not—and does not—decide that issue now. Preliminary approval of the settlement is not an endorsement or pre-approval of any future fee request, which will be considered at the final fairness hearing.

United States District Court
Northern District of California

the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

Here, the total settlement amount constitutes between approximately 35.5% and 39.1% of what Class Counsel estimates to be the realistic recovery at trial. Dkt. No. 44-1 at 21. Counsel estimates that the 527 Class Members worked approximately 61,833 workweeks during the Class Period. *See* Dkt. No. 47 at ¶ 3. They estimate that the range of recovery is $6.97 to $1,944.63, depending on the number of workweeks each Class Member actually worked during the Class Period. *See id.* at ¶ 4. And the average recovery will be approximately $817.99 per person. *See id.* at ¶ 3. Plaintiff acknowledges that he would face substantial risk in continuing to litigate this case, including in certifying the class and prevailing at trial and through the appeals process. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the Settlement Agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*   \*   \*

Having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

//

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will send class notice via first-class U.S. mail to each class member at their last known address, as provided by Defendants and updated by the administrator as appropriate. SA § 3.4. Any letters returned as undeliverable will be sent to any updated address provided with the returned mail. *Id.* at § 3.4.1. If no forwarding address is provided, the settlement administrator will attempt to determine the correct address using the National Change of Address Database. *Id.* The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed class notice to the Settlement Agreement. *See* Dkt. No. 44-2, Ex. A. The notice packets will include individualized estimates of the number of weeks worked for each class member. *See id.* The notice also explains how to opt out of or object to the Settlement Agreement. *Id.*

The notice also informs class members that Class Counsel will file a motion with the Court for attorneys' fees, as well as reimbursement of litigation costs and expenses advanced by Class Counsel. *Id.* It also provides that Plaintiff may request up to $10,000 for his services as Class Representative. *Id.*

To enable class members to review the motion for attorneys' fees and the motion for incentive award, Class Counsel shall include language in the settlement notice: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiff's incentive award; (2) specifically stating the deadline for any class member objections to these motions; and (3) informing class members how to access the motion and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court therefore finds that with these changes, the content of the proposed notice provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V. CONCLUSION

The Court **GRANTS** the motion for preliminary approval. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |

12

| Filing deadline for final approval motion | |
|---|---|
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated: 10/10/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

13