UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE VIGIL,<br><br>   Plaintiff,<br><br> v.<br><br>HYATT CORPORATION, et al.,<br><br>   Defendants. | Case No. 22-cv-00693-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 51, 52 |

Pending before the Court are Plaintiffs' unopposed motions for final approval of class action settlement and for attorneys' fees, costs, and incentive award. Dkt. Nos. 51, 52. The Court held a final fairness hearing on February 22, 2024. For the reasons detailed below, the Court **GRANTS** the motion for final approval. The Court also **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorneys' fees, costs, and incentive award.

I.  **BACKGROUND**

 A. **Factual Allegations and Procedural Background**

Plaintiff Joe Vigil worked as a security officer at the Grand Hyatt San Francisco hotel from approximately February 2001 to November 2020. Dkt. No. 44-2, Ex. C ("SAC") at ¶¶ 2, 23. Plaintiff alleges that he and putative class members were not properly compensated for their work. *See id.* at ¶¶ 23–26. Specifically, Plaintiff contends that Defendants Hyatt Corporation and Grand Hyatt S.F., LLC had a uniform policy of requiring employees to work off the clock. *Id.* at ¶ 26. Employees were not allowed to leave the premises during meal and rest periods, and were required to carry walkie talkies, cellular phones, and other such devices even during their meal and rest periods. *See id.* at ¶¶ 27, 29–30, 41, 46. At other times, because of the demands of work, employees were not provided any meal or rest periods. *See, e.g., id.* at ¶¶ 38–39, 44–45. During the COVID-

1   19 pandemic, employees were also required to wait for an off-the-clock COVID-19 screening before

2   resuming work. *See id.* at ¶¶ 28, 31, 40. Security personnel, such as Plaintiff, were not provided

3   any breaks and had to remain at their posts to perform these screenings and monitor security

4   cameras. *Id.* at ¶ 32. Employees were often required to use their personal phones during work, but

5   were not compensated for such expenses. *See id.* at ¶ 49. Plaintiff alleges that as a result of these

6   policies, Defendants failed to (1) pay minimum and overtime wages and sick leave; (2) provide meal

7   and rest periods; (3) timely pay wages during employment and upon separation; (4) reimburse

8   necessary expenses; and (5) maintain accurate timekeeping and payroll records. *See id.* at ¶¶ 7, 61–

9   140.

10  In December 2022, the parties participated in a full-day mediation with mediator Paul

11  Grossman. *See* Dkt. No. 44-1 at 9.[1] The parties ultimately entered into a settlement agreement,

12  fully executed in May 2023. *See* Dkt. No. 44-2, Ex. 1 ("SA" or "Settlement Agreement").

13  Plaintiffs filed a motion for preliminary approval on May 19, 2023, *see* Dkt. No. 44, and the Court

14  granted the motion on October 10, 2023, *see* Dkt. No. 48. The parties now seek final approval of

15  the class action settlement, and Plaintiffs seek attorneys' fees, costs, and an incentive award for the

16  named Plaintiff. *See* Dkt. Nos. 51, 52.

17  **B.    Settlement Agreement**

18  The key terms of the Settlement Agreement are as follows:

19  Class Definition: The Settlement Class is defined as "all current and former non-exempt,

20  hourly employees working for Defendants at the Grand Hyatt San Francisco hotel at any time

21  between November 2, 2017 to March 9, 2023." SA § 1.3.

22  Settlement Benefits: Defendants will make a $725,000 non-reversionary payment. SA

23  §§ 1.16, 5.1, 5.7. The parties propose that $10,000 of this gross settlement fund be allocated to the

24  Private Attorneys General Act ("PAGA") claim as civil penalties. *Id.* at §§ 1.19, 5.6. Of this

25  PAGA Payment, $7,500 will be paid to the California Labor and Workforce Development Agency

26  ("LWDA") and $2,500 will be distributed pro rata to class members. *Id.*; *see also* Cal. Lab. Code

---

[1] All references to page numbers in filings are to the ECF pagination at the top of the document.

§ 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees). The gross settlement fund also includes Court-approved attorneys' fees and costs, settlement administration fees, the employees' share of payroll taxes, any incentive payment to Plaintiff as class representative, and payments to class members. SA § 1.16. The cash payments to the class will be based on the number of weeks each class member worked during the relevant class period. *Id.* at §§ 1.17, 5.7.1.

Release: All Settlement Class Members will release Defendants and their subsidiaries:

> of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind between November 2, 2017 through March 9, 2023, for any and all claims that were raised or could have been raised based on the factual allegations made in the operative Second Amended Consolidated Complaint. This includes claims for (1) failure to pay minimum wages; (2) failure to pay overtime wages at the regular rate of pay; (3) failure to provide required meal periods and pay premium pay at the regular rate of pay; (4) failure to provide required rest periods and pay premium pay at the regular rate of pay; (5) failure to timely pay wages due and payable during employment; (6) failure to time pay wages upon separation; (7) failure to reimburse necessary expenses; (8) knowing and intentional failure to comply with itemized wage statement provisions; (9) failure to maintain timekeeping and payroll records; (10) failure to properly pay sick leave; (11) PAGA claims for civil penalties pursuant to Labor Code sections 200, 201, 202, 203, 204, 210, 216, 225.5, 226, 226.3, 226.7, 246, 248, 248.5, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2698-2699.5, and 2802; (12) claims brought under Business & Professions Code section 17200 et seq.; (13) claims arising out of alleged violations of the California Labor Code sections 200, 201, 202, 203, 204, 210, 216, 225.5, 226, 226.3, 226.7, 246, 248, 248.5, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2698-2699.5, and 2802, and California Industrial Welfare Commission Wage Order No. 5-2001; (14) penalties of any nature; (15) interest; (16) attorneys' fees and costs; and (17) any other claims arising out of or related to the Second Amended Consolidated Complaint filed in the Action through March 9, 2023.

SA § 6.1; *see also id*. at §§ 1.26, 1.27.

The checks distributed to class members will also include the following language:

> My signature or cashing of this check constitutes a full and complete release of Hyatt Corporation, and all of their current or former subsidiary or affiliated entities, and their current or former officers, directors, and employees, for any and all claims asserted or that could have been asserted based on the facts alleged in the operative Second Amended Consolidated Complaint in the lawsuit entitled *Vigil v.*

3

1  *Hyatt Corporation, et. al*, pending in the United States District Court, Northern District of California, Case No. 4:22-cv-00693-HSG, including the claims brought under the California Labor Code, California Unfair Competition Law, or PAGA, arising during my employment at any time between November 2, 2017 through March 9, 2023.

*Id.* at § 5.8.1.

<u>Incentive Award</u>:  The named Plaintiff may apply for an incentive award of no more than $10,000.  SA §§ 5.4, 5.4.1.

<u>Attorneys' Fees and Costs</u>:  Class Counsel will file an application for attorneys' fees not to exceed 35% of the Gross Settlement Amount, or $253,750, and costs not to exceed $25,000.  SA §§ 5.3, 5.3.1.

<u>Opt-Out Procedure</u>:  The deadline for a class member to submit a request for exclusion or to object to the Settlement is 45 calendar days after the initial mailing date of the notice.  SA §§ 4.2, 4.2.1, 4.2.2.  Defendants also retain the right to withdraw from the Settlement Agreement if 5% or more of the class members opt out.  *Id.* at § 4.2.3.

## II.     DISCUSSION

### A.     Final Settlement Approval

#### 1.     Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on October 10, 2023, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 48 at 4–6.

#### 2.     The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth

4

Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (internal quotations marks and citations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043 (citations omitted). These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (citation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*McKinney-Drobnis*, 16 F.4th at 609 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) (emphasis omitted). In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that class members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

5

### i. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id*. Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 48 at 11–12; *see also* Dkt. No. 57 ("Suppl. Lee Decl.") at ¶¶ 3–16. As of November 8, 2023, Phoenix Class Action Administration ("Phoenix") sent Notice Packets via U.S. first class mail to all 664 Class Members on the Class List. *Id*. at ¶ 5. Phoenix made efforts to skip trace and re-mail all returned Notice Packets. *Id.* at ¶ 6. After these efforts, no Notice Packets remained undeliverable. *Id.* at ¶ 7. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### ii. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 245 at 7–12; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will be distributed to class members; and the Court still carefully scrutinizes the request for attorneys' fees and incentive award to ensure class members' interests are protected under the

1  settlement.  *See* Section II.B.  The Court further finds that other factors discussed in *McKinney-*
2  *Drobnis* also indicate that the proposed settlement is fair, adequate, and reasonable.

> **a.      Strength of Plaintiff's Case, Litigation Risk, and Risk of Maintaining Class Action Status**

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (citation omitted).

The Court finds that the amount offered in settlement is reasonable in light of the risks that Plaintiffs would face in litigating the case given the nature of the asserted claims.  Were this case to proceed, Class Counsel anticipate numerous hurdles to class recovery.  *See* Dkt. No. 52-1 at 19–20.  For example, counsel emphasize the potential merits of the legal and factual defenses expected to be raised by Defendants.  *See* Dkt. No. 52-2 ("Hawkins Final Approval Decl.") at ¶ 23.  Counsel stress that throughout this litigation and the settlement process, Defendants have denied, and continue to deny, any liability or wrongdoing of any kind associated with Plaintiffs' claims, and that Defendants have produced substantial evidence to support their defenses, such that recovery is uncertain.  *Id*.  Furthermore, despite having confidence in their claims, Class Counsel acknowledge facing uncertainty in proving the systemic violations alleged in this case.  *Id*. at ¶ 24.  In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class and avoided these risks.  *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement).  Accordingly, these factors also weigh in favor of approving the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

> **b.      Settlement Amount**

The Court previously concluded that the amount of the settlement was within the range of possible approval.  *See* Dkt. No. 48 at 10.  Its opinion has not changed.  Based on the facts in the

record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (citing cases).

Here, the gross settlement amount represents between approximately 35.5% and 39.1% of what Class Counsel estimates to be the realistic recovery at trial. *See* Hawkins Final Approval Decl. at ¶ 27. Counsel contends this amount is fair and reasonable in view of the odds of overcoming Defendants' arguments and the evidence that they properly reimbursed business expenses, the obstacles inherent in class certification, the challenges of proving elements of each cause of action, the derivative nature of many of the claims, the expense of further litigation, and the recovery rate, even if Plaintiffs were to prevail, after years of continued and costly litigation. *Id*. The Court agrees, particularly as "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Further, the total settlement amount promises the 663 current claimants meaningful individual recovery. These putative class members worked a total of 62,696 workweeks during the relevant class period. *See* Suppl. Lee Decl. at ¶ 11. Each workweek is valued at approximately $6.85. *Id*. The average claimant will recover around $647.56; the highest individual payment will be approximately $1,894.89, and the lowest individual payment will be approximately $4.89. *Id*. at ¶ 14. The Court finds that this recovery is significant, especially when weighed against the litigation risks in this case, such that this factor weighs in favor of approval.

### c. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. The parties settled after conducting significant discovery and investigation into Plaintiffs' claims. *See* Dkt. No. 52-1 at 12–13. Thus, the Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to

assess the likelihood of success on the merits. This factor weighs in favor of approval.

#### d. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.") (citation omitted).

As discussed above, the settlement terms were publicized through a notice process that this Court has deemed adequate. Only one class member requested exclusion from the settlement, and no class members objected. *See* Dkt. No. 52-1 at 16; Suppl. Lee Decl. at ¶¶ 8–10; Hawkins Final Approval Decl. at ¶¶ 12–13; *see also Martin v. AmeriPride Servs., Inc.*, No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement.") (citations omitted). The Court finds that the positive reaction of the settlement class supports approval of the settlement.

\* \* \*

After considering and weighing the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees, Costs and Expenses, and Incentive Award

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel ask the Court to approve an award of $241,666.67 in attorneys' fees and $24,253.43 in costs. Dkt. No. 51-1 at 8–24. Counsel also seek a $10,000 incentive award for the named Plaintiff. *Id.* at 24–26.

#### 1. Attorneys' Fees and Costs

##### a. Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of

1  litigation expenses from the common fund they created for the benefit of a class.  *See* Fed. R. Civ.
2  P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).  The purpose of the "common
3  fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of
4  the fund [to] share the wealth with the lawyers whose skill and effort helped create it."  *In re*
5  *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (citation omitted).
6  The district court has discretion over the amount of attorney fees to award.  *Vizcaino v. Microsoft*
7  *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).
8        Under California law, the "percentage of fund method" is proper in class actions.  *Laffitte*
9  *v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016).  In common fund cases, 25% of the total pool
10  is the "benchmark" for a reasonable fee award.  *See, e.g.*, *In re Bluetooth,* 654 F.3d at 942.
11  However, even where the benchmark is requested, the award "must be supported by findings that
12  take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  These
13  circumstances include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and
14  the quality of work; (4) the contingent nature of the fee and the financial burden carried by the
15  plaintiff; and (5) awards made in similar cases.  *See id*. at 1048–50.
16        In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage
17  fee."  *Laffitte*, 1 Cal. 5th at 506.  "The lodestar figure is calculated by multiplying the number of
18  hours the prevailing party reasonably expended on the litigation (as supported by adequate
19  documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."
20  *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965).  Class Counsel is also entitled to
21  recover "those out-of-pocket expenses that would normally be charged to a fee paying client."
22  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations
23  omitted).

      **b.**    **Discussion**

25      Class Counsel here seek $241,666.67 in attorneys' fees and $24,253.43 in costs, or
26  $265,920.10 total.  *See* Dkt. No. 51-1.  Class Counsel urge that their requested fees are
27  appropriate under the "percentage of fund" method, in that they represent one-third of the
28  $725,000 settlement fund, which is below the maximum amount that may be requested under the

10

1  parties' Settlement Agreement. *See generally id.*

2  However, the Court is cognizant of its obligation to review class fee awards with particular
3  rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (internal quotation marks and citation omitted). Here, while the parties worked efficiently to settle this case, the Court does not find that the record warrants the requested award of over 33% of the fund. Instead, a benchmark 25% award, or $181,250.00, is appropriate under the circumstances.[2]

The first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). As discussed, Class Counsel obtained a significant recovery for the class by securing a $725,000 non-reversionary settlement fund. Even after factoring in fees, costs, and service awards, class members stand to receive $647.56 on average for their injuries. *See* Suppl. Lee Decl. at ¶ 14. The Court agrees that this is a good result that confers benefits on the class. The fact that no class members have objected and only one class member opted out buttresses this conclusion. Accordingly, this factor weighs in favor of granting substantial fees.

A fees award also appropriately accounts for the risks that Plaintiffs would face in further litigation: the risk that further litigation might result in Plaintiffs not recovering *at all* is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048. As Class Counsel

---

[2] Plaintiffs contend that in *Laffitte*, the California Supreme Court declined to adopt the 25% benchmark, making that benchmark inapplicable when California law governs the fee motion. Dkt. No. 51-1 at 13. The Court disagrees. The *Laffitte* court acknowledged that the Ninth Circuit has endorsed the 25% benchmark, and held that the percentage of fund method survived in California class action cases. *See* 1 Cal. 5th at 495, 506.

11

explained in support of the motion for final approval, Plaintiffs could face considerable difficulty obtaining similar recovery through further litigation. *See* Hawkins Final Approval Decl. at ¶¶ 22–25. Class Counsel also anticipated a hard fight to overcome the legal and factual defenses expected to be raised by Defendants, particularly in light of the substantial evidence Defendants have produced. *Id*. at ¶ 23. However, Class Counsel fail to show how these risks were significant or unique as compared to those in similar straightforward wage and hour cases. *Cf. Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" where the plaintiffs lost twice in the district court—once on the merits, and once on the class definition—and counsel twice succeeded in reviving their case on appeal); *Vandervort v. Balboa Cap. Corp*., 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) (justifying upward departure where class counsel pursued and obtained certification of "an unprecedented class," and the defendant's vigorous opposition to the case included an interlocutory appeal of the class certification order as well as a motion for summary judgment). Therefore, this factor does not weigh in favor of an upward departure from the benchmark.

Counsel also litigated this case skillfully and professionally. But, despite counsel's boilerplate assertion that this case involved "complex and novel legal issues," Dkt. No. 51-1 at 22, there is no indication that this case was particularly complicated, let alone that it materially differed from the related case, *Crump*, which was fully adjudicated and closed almost exactly a year prior to the filing of the pending motions in this case. *See, e.g*., *Rodriguez v. El Toro Med. Inv'r Ltd. P'ship*, No. 8:16-cv-00059-JLS-KES, 2018 WL 11348094, at *7 (C.D. Cal. June 26, 2018) (finding that, while the result achieved was favorable, it was not "exceptional," and that the amount of skill and quality of representation did not support an upward adjustment of the 25% benchmark); *Pedraza v. Pier 1 Imports U.S. Inc*., No. 8:16-cv-01447-JLS-DFM, 2018 WL 11327201, at *5 (C.D. Cal. June 19, 2018) ("In the absence of any identified novel or complex legal or factual issues, the Court does not find that Counsel's experience and discovery efforts justify an upward departure from the 25% benchmark.") (footnote omitted). Accordingly, these factors counsel against an upward adjustment of the 25% benchmark.

Outcomes in comparable wage and hour cases support awarding Class Counsel the benchmark 25% of the common fund. *See, e.g*., *Camilo v. Ozuna*, No. 18-cv-02842-VKD, 2020

WL 1557428, at *9–10 (N.D. Cal. Apr. 1, 2020) (declining to depart from the benchmark where 30% of the $375,000 settlement fund was requested in wage and hour case); *Pedraza*, 2018 WL 11327201, at *4 (declining to depart from the benchmark where 30% of the $750,000 settlement fund was requested in wage and hour case). In the same vein, other courts in this district reviewing wage and hour class action settlements have approved attorneys' fee awards over the 25% benchmark in cases involving more protracted and complex litigation than in this case. *See, e.g.*, *Smith v. Am. Greetings Corp.*, 14-cv-02577-JST, 2016 WL 362395, at *8–9 (N.D. Cal. Jan. 29, 2016) (approving attorneys' fees totaling 28% of the settlement fund); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *11–12 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees totaling 33% of the settlement fund); *Moore v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal. Aug. 4, 2015) (approving attorneys' fees totaling 27% of the settlement fund).

    This Court's approval of a 28% fee award in *Crump* further highlights why the 25% benchmark is appropriate here. There, the Court found that an increase from the benchmark was warranted because the settlement constituted approximately 75 to 100 percent of the estimated damages stemming from Defendant's timekeeping policy. *Crump v. Hyatt Corp.*, No. 20-cv-00295-HSG, 2023 WL 1997770, at *8 (N.D. Cal. Feb. 14, 2023). Plaintiffs have not shown an equivalently exceptional result here: although Class Counsel capably achieved a solid result for the class, "they did not display a degree of skill warranting an upward adjustment to the 25% benchmark." *Camilo*, 2020 WL 1557428, at *9.

    The reasonableness of an award of 25% of the settlement fund is confirmed by a lodestar cross-check. As a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted). Here, the Court finds that counsel's proffered lodestar is inflated, and ultimately does not justify an award of one-third of the settlement fund.

13

1       First, there was no contested motions practice in this case.  The parties participated in a
2  number of Case Management Conferences, mediation, the unopposed motion for preliminary
3  approval, and the unopposed motions for final approval and attorneys' fees.  *See, e.g.*, Dkt. Nos.
4  22, 29, 43, 44, 46, 51, 52, 55.  Class Counsel initially developed a discovery plan and propounded
5  formal discovery on Defendants, which included a deposition notice.  *See* Dkt. No. 52-1 at 12.
6  However, once the parties stipulated to mediation, they elected to engage in an informal
7  information exchange.  *Id*.  As far as the Court is aware, no formal depositions were taken in this
8  case.  In contrast, in addition to mediation and motions for preliminary approval, final approval,
9  and attorneys' fees, *Crump* involved formal written discovery, 10 depositions, and an opposed
10 motion for class certification.  *See, e.g., Crump*, Dkt. No. 70-1 at ¶¶ 1, 4, 10; *id.*, Dkt. Nos. 46, 49.
11 In *Crump*, counsel initially represented that 908 hours were expended in litigating the case, and
12 applying the proffered flat $550 hourly rate, the resulting lodestar was $499,400.00, which
13 exceeded the $346,500.00 fee request.  *See id*., Dkt. No. 70 at 16; *id*., Dkt. No. 70-1 at ¶ 5.  Here,
14 Class Counsel eventually represented that they spent 319.2 hours litigating the case, resulting in a
15 lodestar of $236,042.50.  *See* Dkt. No. 51-1 at 16, 19–23; Dkt. No. 51-2 ("Hawkins Fee Decl.") at
16 ¶ 31.  Notably, counsel's final lodestar is lower than the $241,666.67 requested in the motion for
17 attorneys' fees, and the request effectively seeks two-thirds of the fees requested in *Crump* for
18 one-third of the work.
19      Second, the fees motion provides a high-level summary of the tasks that the hours were
20 spent on, *see* Dkt. No. 51-1 at 20, and counsel's declaration describes the hourly rate, total hours,
21 and types of tasks performed by four attorneys and an unspecified number of paralegals, Hawkins
22 Fee Decl. at ¶¶ 31–42.  In the motion, counsel acknowledged failing to include "their voluminous
23 detailed time entries with this submission," and noted they would provide those records for in-
24 camera review upon request.  Dkt. No. 51-1 at 21 n.4.  During the final fairness hearing, the Court
25 indicated that counsel needed to submit more detailed records, sorted by the type of task, to
26 support the fee request, then issued an order directing submission of those records for in-camera
27 review.  *See* Dkt. Nos. 55, 56.
28      In response, Class Counsel produced more records, including a breakdown of billing

United States District Court
Northern District of California

1  entries for the four attorneys and various other individuals, who the Court presumes are the
2  paralegals that worked on this case.  Having reviewed the billing records (which were not sorted
3  by task despite the Court's directive) in more detail, the Court finds that the records still fall
4  substantially short of adequately supporting counsel's lodestar calculations.  Counsel bears the
5  burden of supporting its own fee request, and the Court does not—and should not—simply accept
6  counsel's claims without further inquiry.  *See Vizcaino*, 290 F.3d at 1052 (cautioning against
7  "[r]ubber-stamp approval" of fee requests).

8       In particular, the submitted timesheet entries are vague, hampering the Court's ability to
9  properly assess whether the claimed hours were reasonably incurred.  For example, the
10 descriptions for several billing entries are "Crs re status," "Crs re action," " and "Crs re
11 mediation."  Other billing entries have descriptions such as "Correspondence re dates" and
12 "Correspondence re court order."  It is entirely unclear what these time entries refer to.  To the
13 extent these entries refer to internal "correspondence," or counsel's discussion of the case via
14 intraoffice meetings, emails, and phone calls, the Ninth Circuit has indicated that the Court has
15 discretion to discount such time.  *See Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008)
16 (directing courts to exclude from a fee request any hours that are "excessive, redundant, or
17 otherwise unnecessary."); *Terry v. City of San Diego*, 583 Fed. App'x 786, 790 (9th Cir. 2014)
18 (permitting reduction for time counsel spent conferring among themselves and co-counsel editing
19 each other's briefs because this time could be considered unnecessary, excessive, or duplicative).

20      Moreover, the hourly rates Class Counsel assign to themselves are unreasonable and
21 insufficiently supported.  The declaration in support of the fees motion provides that Mr.
22 Hawkins' hourly rate is $1,050 per hour, Ms. Lucio's hourly rate is $775 per hour, Mr. Murray's
23 hourly rate is $750 per hour, and Mr. Brown's hourly rate is $450 per hour.  *See* Hawkins Fee
24 Decl. at ¶¶ 34–37, 40.  As justification for these hourly rates, counsel attach an excerpt of the 2021
25 Real Rate Report compiled by Wolters Kluwer, which "surveyed the hourly rates charged in 2021
26 by hundreds of attorneys in the Los Angeles County area."  *Id*. at ¶ 43 (citing Dkt. No. 51-2, Ex.
27 1).  Counsel also rely on the Laffey Matrix as support for their hourly rates.  *Id*. at ¶ 44 (citing Dkt.
28 No. 51-2, Ex. 2).  However, they fail to provide any citations to cases in which these exceedingly

high proposed hourly rates were deemed reasonable. *Cf. Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 263–64 (N.D. Cal. 2015) (collecting cases, and finding that other courts in this district have determined that rates ranging from $250 to $700 are appropriate in wage and hour class actions for attorneys of comparable experience); *Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2021 WL 2333851, at *7 (N.D. Cal. June 8, 2021) (finding hourly rates ranging from $550 to $700 in wage and hour case to be reasonable); *Morrison v. Am. Nat'l Red Cross*, No. 19-cv-02855-HSG, 2021 WL 75743, at *7 (N.D. Cal. Jan. 8, 2021) (finding hourly rates ranging from $495 to $625 in wage and hour case to be reasonable); *Berry v. Urban Outfitters Wholesale, Inc.*, No. 13-cv-02628-JSW (KAW), 2015 WL 580579, at *4 (N.D. Cal. Feb. 11, 2015) (rejecting partner's requested hourly rate of $550 in wage and hour case and instead awarding at a rate of $400 per hour). "These considerations cast doubt on the reasonableness of the hours billed and the overall lodestar total." *Rodriguez*, 2018 WL 11348094, at *7. And counsel's reliance on the Laffey Matrix is unpersuasive, given that courts appropriately have criticized it as being of little significance in this district. *See Camilo*, 2020 WL 1557428, at *10 n.7 (citing *Bellinghausen*, 306 F.R.D. at 263 (collecting cases)).

Finally, it appears that at least some of the time claimed by the paralegals was spent on purely clerical tasks, which generally are not recoverable in a motion for attorneys' fees and should instead be subsumed in normal overhead costs. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("the filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates"); *Camilo*, 2020 WL 1557428, at *10 n.7 (same); *LaToya A. v. San Francisco Unified Sch. Dist.*, No. 3:15-cv-04311-LB, 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016) (same); *Yates v. Vishal Corp.*, No. 11-cv-00643-JCS, 2014 WL 572528, at *5 (N.D. Cal. Feb. 4, 2014) (same).

In sum, Class Counsel has not provided any reasonable justification for the large upward departure requested from the 25% benchmark. Nor do counsel's billing records set forth any basis for the Court to conclude that the hours expended and rates claimed were reasonable. Accordingly, the Court will award counsel fees of 25% of the settlement, or $181,250.00. *See, e.g.*, *Camilo*, 2020 WL 1557428, at *10 (awarding attorneys' fees of 25% under analogous

circumstances).

An attorney who has created a common fund for the benefit of the class is also entitled to reimbursement of reasonable litigation costs from that fund. *See Harris*, 24 F.3d 16 at 19. Class Counsel is thus entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.* (internal quotation marks and citations omitted). Here, counsel request $24,253.43, which is less than the $25,000 maximum reflected in the preliminary request. *See* Dkt. No. 51-1 at 23–24. To support their request, counsel have submitted a breakdown of their costs and expenses, which includes costs for experts, mediation, travel, and service of process fees. *See* Dkt. No. 51-2, Ex. 3. The largest claimed cost of $15,000 was for mediation services. *Id*. The Court finds that counsel's requested expenses are reasonable and **GRANTS** the request as to the costs.

\* \* \*

The Court accordingly **GRANTS IN PART** and **DENIES IN PART** the request for attorneys' fees and costs, and awards to Class Counsel $181,250.00 in attorneys' fees and $24,253.43 in costs, for a total of $205,503.43.

### 2.    Incentive Award

Lastly, Class Counsel request an incentive award of $10,000 for named Plaintiff Joe Vigil. *See* Dkt. No. 51-1 at 24–26. While awards are discretionary, "[i]t is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at \*6 (N.D. Cal. Feb. 6, 2012) (citation omitted). Service awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. If they choose to grant such awards, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Courts in this district have approved of a $5,000 incentive award in comparable wage and

hour cases. *See, e.g.*, *Harris*, 2012 WL 381202, at *7 (observing that "as a general matter, $5,000 is a reasonable amount"); *Crump*, 2023 WL 1997770, at *11 (awarding $5,000); *Smith*, 2016 WL 362395, at *11 (same); *Odrick v. UnionBancal Corp.*, No. C 10–5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against their former employer." *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958–59). However, larger awards may also be appropriate. *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG, 2019 WL 3323087, at *7 (N.D. Cal. July 24, 2019) (awarding $10,000); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) (awarding $20,000). To evaluate the reasonableness of a proposed service award, courts look to factors such as the representative's service to the class, investment of time, and reputational harm. *See Staton*, 327 F.3d at 977. Another important consideration is the proportionality between the incentive award and the range of class members' settlement awards. *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (declining to award a $10,000 incentive award where the requested award was nearly three times the largest amount paid to any class member, and even $5,000 exceeded the range of class members' settlements).

Here, Class Counsel represent that the named Plaintiff "spent hours meeting with [] counsel, gathering documents, reviewing complaints, communicating with other class members, monitoring the case, assisting with the settlement negotiations and approval process, reviewing the Settlement Agreement, [and] reviewing his declarations in support of approval." Dkt. No. 51-1 at 25. Counsel also emphasize that Plaintiff undertook a substantial reputational risk in bringing this case. *Id.* However, counsel's and Plaintiff's declarations do not actually specify how many hours Plaintiff spent working on this case. *See* Hawkins Fee Decl.; Dkt. No. 51-3. Moreover, the average claimant is projected to recover around $647.56. *See* Suppl. Lee Decl. at ¶ 14. The proposed $10,000 incentive award is over 15 times this amount. As in *Burden*, even a $5,000 award exceeds the highest individual payment of approximately $1,894.89. *See Burden*, 2013 WL

18

1  3988771, at *6; Suppl. Lee Decl. at ¶ 14.  The Court does not minimize Plaintiff's role in enabling
2  a favorable result for his fellow class members, but considering all the circumstances of this case,
3  the Court finds that a $5,000.00 service award is reasonable to compensate Plaintiff for his efforts.
4  The Court therefore **GRANTS IN PART** the request for an incentive award in the amount of
5  $5,000.00.

**III.   CONCLUSION**

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 52, and **GRANTS IN PART** and **DENIES IN PART** the motion for attorneys' fees and incentive award, Dkt. No. 51.  The Court awards attorneys' fees in the amount of $181,250.00; costs in the amount of $24,253.43; and an incentive award to the named Plaintiff in the amount of $5,000.00.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement.  The parties are further directed to file a short stipulated final judgment of two pages or less within 14 days from the date of this order.  The judgment need not, and should not, repeat the analysis in this Order.  For guidance on the format of such a stipulated judgment, the Court directs the parties to review *Morrison v. American National Red Cross*, No. 4:19-cv-02855, Dkt. No. 56.

Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy pres* beneficiaries, and others pursuant to the Settlement Agreement).  In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.  Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases.  The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website.  The Court

may hold a hearing following submission of the parties' Post-Distribution Accounting.

The Court will withhold 10% of the attorney's fees granted in this Order until the Post-Distribution Accounting has been filed.  Class counsel shall file a proposed order releasing the remainder of the fees when they file their Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated:  5/13/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

20